ANDERSON ET AL., RESPONDENTS, *v.* WIRKMAN, ADMINISTRATOR, APPELLANT.

(No. 5,124.)

(Submitted April 9, 1923. Decided May 1, 1923.)

[215 Pac. 224.]

*Wrongful Death—Action Against Administrator—Witnesses— Survival Statute—Interpretation—Conviction—Parole—Presumptions — Evidence—Mortality Tables—Judicial Notice— Pleading—Defective Complaint—Defect Cured by Answer— Excessive Verdict.*

Wrongful Death—Action Against Administrator—When Plaintiff may Testify.

1. In an action against an administrator brought under section 9076, Revised Codes of 1921, for damages for the wrongful killing of plaintiff's husband by defendant's intestate, where plaintiff was the only surviving witness and her testimony was indispensable to recovery, the court, in its discretion properly permitted her to testify under the exception to the general rule (sec. 10535, Rev. Codes 1921) making such testimony inadmissible, the exception providing that where by its exclusion injustice will be done the testimony may be admitted.

[67 Mont. 176.]

Same—Mortality Tables—Judicial Notice—Evidence.

2. Since in an action for damages for wrongful death the court may take judicial notice of mortality tables if satisfied that those produced are of that character, the fact that a witness was permitted to read from them instead of introducing them in evidence was not error of which defendant could complain.

Pleading—Defective Complaint may be Cured by Answer—Admissions.

3. A material allegation in the complaint may be supplied by the answer, the defendant being bound by his pleading even though the allegation claimed to have cured the defect was made in an endeavor to plead a defense held insufficient for that purpose.

Wrongful Death—Actions—Survival Statute.

4. A cause of action in favor of one whose death results from the wrongful act of another, under section 9086, Revised Codes of 1921 (a general survival statute), survives the death of the wrongdoer as well as the death of the party whose rights were infringed.

Statutes in Derogation of Common Law—Liberal Construction.

5. Under section 4, Revised Codes of 1921, a statute in derogation of the common law must be liberally, not strictly, construed.

Statutes—"Substantive" and "Adjective" Law.

6. "Substantive law" is that part of the law which creates, defines and regulates rights, while "adjective law" prescribes the method of enforcing rights or obtaining redress for their invasion.

Wrongful Death—Actions—Survival Statute—Interpretation.

7. *Held* under the rule above (par. 6) that the latter portion of section 9086, Revised Codes of 1921, which indicates the person who may commence the action declared by the fore part thereof not to abate by death, or to continue it if commenced before the death of the party defendant, is adjective law.

Convicts—Effect of Parole.

8. The effect of a parole granted a convict is to suspend the execution of the judgment until the end of the term of imprisonment, or until the paroled prisoner is rearrested for breach of the parole, and hence where such a prisoner was not rearrested after parole and enjoyed his liberty from the time of his discharge until the end of his term, he was thereafter *prima facie* rightfully at large and not subject to further restraint for the crime for which he was committed to prison.

Same—Prison Board—Parole—Official Duty—Presumption.

9. In the absence of countervailing evidence, the presumption obtains that the state prison board in paroling a prisoner sentenced to life imprisonment for murder regularly performed its duty and before granting the parole commuted his sentence, since without commutation in such case parole is not authorized by law.

Wrongful Death of Paroled Exconvict—Damages—Instruction—Proper Refusal.

10. In an action for damages for the wrongful killing of one who had been sentenced to life imprisonment but paroled and whose term under the presumption above (par. 9) had expired some four years before the killing, an instruction on the question of damages

---

2. Judicial notice of mortality tables, see note in **Ann. Cas. 1918B,** 415.

4. Effect of abatement or survival of action or cause of action for wrongful death upon decease of wrongdoer, see notes in **Ann. Cas. 1915C,** 1052; 11 **L. R. A. (n. s.)** 1157; **L. R. A.** 1916A, 1143.

recoverable, drawn on the theory that he was subject to rearrest at any time, was properly refused in the absence of evidence overcoming the presumption that the state prison board regularly performed its duty.

Same—Excessive Verdict.

11. Where in an action by the wife for damages for wrongful death of her husband the court gave plaintiff's requested instruction limiting recovery to loss of support, excluding the items of loss of comfort, protection and companionship, the evidence showing that other members of the family had assisted in its support and not disclosing the amount of decedent's contribution (a farmer) whose expectancy of life was eighteen years, a verdict for $10,000 *held* excessive and reduced to $5,000.

*Appeal from District Court, Carbon County; C. E. Comer, Judge.*

ACTION by Mary Anderson and others against Andrew Wirkman, as administrator of the estate of Jacob Maki, deceased. Judgment for plaintiffs and defendant appeals. Remanded and new trial granted on condition.

*Messrs. Shea & Wiggenhorn,* for Appellant, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

The plaintiff was disqualified from relating the circumstances of the killing, under section 10535, Revised Codes of 1921. (See 40 Cyc. 2314; *Campbell* v. *Akarman,* 83 N. J. L. 567, 83 Atl. 881; *Nicholson* v. *Kilbury,* 80 Wash. 500, L. R. A. 1916D, 812, note, 141 Pac. 1043.) The weight of authority is to the effect that a cause of action for wrongful death dies with the death of the wrongdoer, or, as the Missouri court put it, the wrongdoer and the wrong "are buried together." (*Bates* v. *Sylvester,* 205 Mo. 493, 120 Am. St. Rep. 762, 11 L. R. A. (n. s.) 1157, 104 S. W. 73; *Willard* v. *Mohn,* 24 N. D. 390, 139 N. W. 979; *Rinker* v. *Hurd,* 69 Wash. 257, 124 Pac. 687; *Hegerich* v. *Keddie,* 99 N. Y. 258, 52 Am. Rep. 25, 1 N. E. 787; *Hamilton* v. *Jones,* 125 Ind. 176, 25 N. E. 193; *Davis* v. *Nichols,* 54 Ark. 358, 15 S. W. 880; *Johnson* v. *Farmer,* 89 Tex. 610, 35 S. W. 1062; *Clark* v. *Goodwin,* 170 Cal. 527,

---

11. Excessiveness of damages in actions for personal injuries resulting in death, see notes in 12 **Am. St. Rep.** 375; **L. R. A.** 1916C, 820.

L. R. A. 1916A, 1142, 150 Pac. 357; *Green* v. *Thompson,* 26 Minn. 500, 5 N. W. 376; *Carrigan* v. *Cole,* 35 R. I. 162, 85 Atl. 934; *Demczuk* v. *Jennifer,* 138 Md. 488, 114 Atl. 471; 17 C. J. 1233.)

Under the facts pleaded and proved, however, it does not appear that a cause of action ever existed or came into being. Putting it another way, we contend that there is no cause of action shown here that could survive. It appearing that Maki died, to establish a cause of action which could survive him, it must appear both from the pleadings and from the proof that Anderson died first and that when Maki died he left surviving him a liability for having killed Anderson. In Corpus Juris, in discussing survival statutes, this language is used: "It has also been held that such survival statutes did not apply where the wrongdoer died before the death of the person killed by him, and, therefore, before the statutory cause of action accrued, there being no cause of action to survive in such a case." (17 C. J. 1233; *Letson* v. *Brown,* 11 Colo. App. 11, 52 Pac. 287; *Beavers' Admx.* v. *Putnam's Curator,* 110 Va. 713, 67 S. W. 353; *Anderson* v. *Hygeia Hotel Co.,* 92 Va. 687, 24 S. E. 269.)

*Mr. John G. Skinner* and *Mr. H. A. Simmons* for Respondent, submitted a brief; *Mr. Skinner* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On September 30, 1919, Jacob Maki shot and killed L. O. B. Anderson, and then committed suicide. A claim was duly presented against Maki's estate but rejected, and this action was then instituted by the heirs of Anderson against the administrator of Maki's estate to recover damages, and such proceedings were had therein that a verdict was returned in favor of the plaintiffs. A new trial was denied, and defendant appealed from the judgment.

1. Mary Anderson, widow of L. O. B. Anderson, was the [1] only surviving witness of the killing, and at the opening

of the trial, counsel for defendant objected to her testifying to the transactions which occurred immediately before the shooting. The objection was overruled, and error is predicated upon the ruling.

Section 10535, Revised Codes of 1921, provides, among other things, that a party to an action prosecuted against an administrator upon a claim or demand against the estate of a deceased person cannot be a witness as to the facts or direct transactions or oral communications between the proposed witness and the deceased, excepting when it appears to the court that, without the testimony of the witness, injustice will be done.

The complaint charges that Maki wrongfully killed Anderson. The answer, while admitting the killing by Maki, denied that it was wrongful, and in effect pleaded that it was done in necessary self-defense. The burden was therefore upon plaintiffs to prove that Anderson's death resulted proximately from the wrongful act of Maki, and, since Mrs. Anderson was the only surviving witness of the tragedy, her testimony was indispensable. If, then, the killing was wrongful, and if we assume that these plaintiffs had a meritorious cause of action, that cause of action would have been defeated by excluding the testimony of the only witness who could detail the facts and circumstances tending to prove that the killing was wrongful.

Under section 7891, Revised Codes of 1907, the disqualification of a witness in the situation of Mrs. Anderson was absolute, but by an amendment made in 1909 (Laws 1909, p. 80) the exception referred to above and now incorporated in section 10535, and another exception not material here, became and have since remained a part of the law of this state.

In *Roy* v. *King's Estate,* 55 Mont. 567, 179 Pac. 821, this court considered the amendment above, and concerning it said: "The evident purpose of this provision was to declare the plaintiff in the action an incompetent witness, unless the defendant waives the incompetency, which he may do, as pro-

vided in the first exception, or unless, under the second exception, it appears to the court that, if the witness is not allowed to testify, recovery cannot be had upon a cause of action which is obviously meritorious." We are satisfied that the Act was construed correctly, and, in view of all the circumstances of this case, and particularly in view of the fact that the killing by Maki was admitted in the pleadings, it cannot be said that the court abused its discretion in permitting Mrs. Anderson to testify to the transactions which preceded immediately the act of killing.

2. A witness, Hakala, testified from mortality tables that the [2] expectancy of Anderson's life was 18.8 years. While the procedure was somewhat irregular, defendant cannot complain. The court could have taken judicial notice of standard tables of mortality, and, if it was satisfied that the tables produced were of that character, further identification was not necessary, and it was altogether immaterial that the witness read from the tables instead of having the tables themselves introduced in evidence. (*Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45.)

3. It is urged that the complaint is insufficient, in that it [3] fails to disclose that Anderson's death preceded the death of Maki. If it were necessary that the fact appear, it is sufficient to say that it does appear. It is elementary that a material allegation omitted from the complaint may be supplied by the answer (*Stephens* v. *Conley*, 48 Mont. 352, Ann. Cas. 1915D, 958, 138 Pac. 189), and in this instance defendant alleged in his answer, as a second defense: "That, after the injuries complained of by the plaintiff, and after the shooting and death of the said L. O. B. Anderson, and before the commencement of this action, to-wit, on the thirtieth day of September, 1919, the said John Maki died, and thereupon any cause of action that plaintiff may have had abated." While it is true that the court instructed the jury that this so-called second defense did not constitute a defense, nevertheless defendant was bound by the allegation

that Maki died after the death of Anderson, and evidence was introduced which, though circumstantial, was ample to show that such was the fact.

4. This action is authorized by section 6486, Revised Codes [4] of 1907 (sec. 9076, Rev. Codes 1921), which is modeled after the English statute known as Lord Campbell's Act (Stats. 9 & 10, Vict., Chap. 93), and which creates in favor of the heirs of one whose death results from the wrongful act of another, a cause of action for damages against the person causing the death.

It is earnestly urged that, even though Anderson died first, and conceding that the killing was wrongful and that plaintiffs had a meritorious cause of action against Maki, that cause of action abated upon the death of Maki, and cannot be prosecuted against his estate.

It was the rule at common law that an action in tort abated upon the death of either party (17 C. J. 1232), and that rule prevailed in this jurisdiction until it was superseded by statute (sec. 5672, Rev. Codes 1921). Section 9086, Revised Codes of 1921, which has been in force in Montana since 1883 (Laws 1883, p. 98), provides: "An action, or cause of action, or defense, shall not abate by death, or other disability of *a* party, or by the transfer of any interest therein," *etc.*

In *Melzner* v. *Northern Pac. Ry. Co.*, 46 Mont. 162, 127 Pac. 146, we held that the section above is a general survival statute. In *First Nat. Bank* v. *Cottonwood Land Co.*, 51 Mont. 544, 154 Pac. 582, that doctrine was reaffirmed, and it was held that the right of action against a director of a corporation who had failed to make the report required by law, survived the death of the delinquent director and could be prosecuted against his estate. It was there said: "The cause of action survives the death of the party in the wrong as well as the death of the one whose rights are infringed." In *Kennedy* v. *Rogan*, 52 Mont. 242, 156 Pac. 1078, it was held that a cause of action for seduction or breach of promise to marry

survives the death of the wrongdoer, and may be prosecuted against his personal representative.

Counsel for defendant insist that the broad statement [5] contained in the opinion in the *Melzner Case* should be restricted, and the decision in each of the other cases should be overruled, and, as the foundation for this contention, it is urged that section 9086 does not in terms provide for the survival of a cause of action against a tort-feasor, and, since that statute is in derogation of the common law, it must be construed strictly, and, if construed strictly, it provides only for a survival of the cause of action in favor of the personal representative of the innocent deceased person and against the *person* wrongfully causing his death, thereby excluding the idea that the legislature intended that the cause of action should survive the death of the wrongdoer.

While it is true that section 9086 states a rule diametrically opposed to the rule which prevailed at common law, it is not true that, for that reason or any other, it should be construed strictly. Section 4, Revised Codes of 1921, declares the law of this state as follows: "The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the Codes or other statutes of the state of Montana. The Codes establish the law of this state respecting the subjects to which they relate and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice."

Counsel cite *Hamilton* v. *Jones*, 125 Ind. 176, 25 N. E. 192, *Bates* v. *Sylvester*, 205 Mo. 493, 120 Am. St. Rep. 761, 12 Ann. Cas. 457, 11 L. R. A. (n. s.) 1157, 104 S. W. 73, *Willard* v. *Mohn*, 24 N. D. 390, 139 N. W. 979, and *Rinker* v. *Hurd*, 69 Wash. 257, 124 Pac. 687, in support of their contention, but without avail. In each of the first three cases the decision was to the effect that the particular statute involved—a statute in each instance corresponding to Lord Campbell's Act—did not authorize the maintenance of a tort action against the personal representative of the deceased tort-feasor, a conclusion with which we

agree fully, but no one familiar with the legislation would ever suggest that Lord Campbell's Act is a survival statute. (*Dillon* v. *Great Northern Ry. Co.,* 38 Mont. 485, 100 Pac. 960.) *Rinker* v. *Hurd* was decided under a survival statute of Washington, which contains an exception which clearly warranted the conclusion reached therein. Not one of the cases is applicable here. Other courts have held that a tort action abates with the death of the wrongdoer, but, so far as our investigation goes, the decision in each instance was based upon the common law or upon a statute materially different from ours. (*Brown* y. *Wightman,* 47 Utah, 31, L. R. A. 1916A, 1140–1142, 151 Pac. 366.)

While the right of action in favor of these plaintiffs is [6, 7] created by section 9076, the right to maintain the action against the estate of Maki depends solely upon the proper construction of section 9086, and with all due respect to counsel for defendant, we think the construction placed upon the language of that section by this court in the cases referred to above is correct. (See, also, *Devine* v. *Healy,* 241 Ill. 34, 89 N. E. 251.) That construction does not render inoperative the remaining portion of the section, as counsel assume. In *First Nat. Bank* v. *Cottonwood Land Co.,* above, we said that the remaining portion is adjective law, and we adhere to that conclusion. It merely indicates the person who may commence the action or interpose the defense, if the action has not been commenced or the defense interposed before the death of a party, or the person who may continue the action, if the action was commenced before the death of the party. As we understand the terms, "substantive law" is that part of the law which creates, defines and regulates rights, as opposed to "adjective law," which prescribes the method of enforcing rights or obtaining redress for their invasion. (1 Words & Phrases (2d Series), 113.)

5. It is insisted that the verdict is excessive and that the [8–10] jury was misled to the defendant's prejudice by instruction 6, given by the court. No fault is found with the

instruction so far as it states a general rule for determining damages in an action for death by a wrongful act, but it is insisted that the facts and circumstances of this particular case require a modification of that rule in harmony with defendant's offered instruction 21, which was refused.

The circumstances are unusual, to say the least. In a third affirmative defense defendant alleged that, on March 21, 1906, Anderson was convicted of the crime of murder of the second degree, and sentenced to imprisonment in the penitentiary for life; that the judgment has not been reversed, modified or set aside, and that, at the time of his death, Anderson was wrongfully and unlawfully at liberty. The reply admits that Anderson was convicted of the crime of murder of the second degree and sentenced to imprisonment in the penitentiary, denies all the other allegations of the third defense, and alleges that long prior to his death Anderson "had been granted a full and complete release and discharge from said penitentiary" and "was discharged by the officers of said penitentiary according to law and granted his liberty."

Upon the trial of this case, counsel for defendant offered in evidence the judgment-roll in the criminal case, but withdrew the offer when it was stipulated that Anderson "was paroled from the penitentiary at Deer Lodge on April 3, 1914, and his parol expired on the third day of October, 1914." In the absence of this stipulation there is not any evidence reflecting upon the issues raised by the third defense and the reply thereto, though counsel for plaintiffs now concede that Anderson was sentenced to imprisonment for life.

It is insisted that, under section 9573, Revised Codes of 1907 (sec. 12264, Rev. Codes 1921) Anderson could not have been paroled lawfully prior to 1919; that in any event, since his parole had expired in October, 1914, he was unlawfully at large at the time of his death; that he was subject to rearrest and to imprisonment for the remainder of his natural life, and therefore the jury should have been instructed, as requested by defendant, that, in determining the damages to which plain-

tiffs might be entitled, consideration should be given to the fact that Anderson was likely to be returned to the penitentiary at any time and plaintiffs thereby deprived of his companionship and support. It may be conceded that there would be merit in this contention, if the record furnished any foundation for it, but it does not. Section 12264 provides that the governor may recommend 'and the state board of prison commissioners may parole any prisoner confined in the penitentiary, except one who has been convicted of a felony prior to the conviction under which he is serving. If the prisoner was sentenced to a term not exceeding twenty-five years, he cannot be paroled until he has served one-half of the term, exclusive of good time allowance. If his term of imprisonment exceeds twenty-five years, he cannot be paroled until he has served at least twelve and one-half years. If his imprisonment is for life, he cannot be paroled until he has served twenty-five years, less the good time allowance which he might have earned if his term had been twenty-five years. The governor, with the approval of the board of pardons, may grant a pardon or commutation of punishment. (Sec. 12247, Rev. Codes 1921.)

It appears from this record that Anderson was paroled on April 3, 1914, but we cannot assume, as counsel for defendant would have us do, that his parole was unlawful or that he was wrongfully permitted his liberty; on the contrary, every reasonable presumption will be indulged that the official duty of the prison board was performed regularly (sec. 10606 [15], Rev. Codes 1921), and this presumption has the force and effect of evidence (sec. 10600, Rev. Codes 1921; *Cooper* v. *Romney*, 49 Mont. 119, Ann. Cas. 1916A, 596, 141 Pac. 289). Hence, in the absence of countervailing proof, it must be conceded that the parole was granted in conformity to the law, and that Anderson was rightfully at large. In order to be eligible to parole at the time he was released from the penitentiary, Anderson must have been granted a commutation of his punishment, or, in other words, his sentence must have been reduced from life imprisonment to a fixed term not exceeding

sixteen years and twenty-one days, since he served but eight years and eleven days, upon the hypothesis that he was delivered to the penitentiary not later than March 23, 1906. (Sec. 11597, Revised Codes 1921.) Assuming, as we must, that the officials discharged their duties regularly and hence that Anderson's sentence had been modified by a reduction of his punishment to a fixed period of sixteen years or thereabouts, his entire term would expire in nine years and three months, or on June 23, 1915, deducting the good time allowance provided by section 12455, Revised Codes of 1921, and the fact that he was permitted his liberty continuously from the date of his discharge is ample evidence that the good time allowance was granted to him. The effect of a parole was to suspend the execution of the judgment until the end of the term or until Anderson might be rearrested for a breach of the parole (*In re Sutton*, 50 Mont. 88, 6 Ann. Cas. 1917A, 223, 145 Pac. 6), and since he was not rearrested he enjoyed his liberty from the date of his discharge until the end of the diminished term, and, having completed that term, he was, *prima facie,* not subject to further restraint on account of that crime.

It is stipulated that Anderson's parole expired on October 3, 1914. Just what was meant by that statement is not made clear; but, if we assume that the parole was granted for six months only, the result is the same, for the parole could not have been granted at all, unless the punishment had been commuted as indicated above, and the reduced term expired in June, 1915, or more than four years before Anderson's death.

In view of these conclusions, the trial court did not err in refusing defendant's offered instruction 21.

6. It is urged that the evidence does not sustain the verdict for $10,000 independently of the consideration just mentioned. Section 9076 above provides: "In every action under this * * * section, such damages may be given as under all the circumstances of the case may be just." But that statute pre-

supposes that the jury will be instructed properly as to the elements to be considered in estimating the amount of the damages.

In *Mize* v. *Rocky Mt. Bell Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189, 100 Pac. 971, it was held that the surviving widow may recover for loss of comfort, protection and companionship as well as for loss of support occasioned by the wrongful death of her husband, and substantially the same rule determines the damages suffered by minor children for the loss of their father. (Tiffany on Death by Wrongful Act, sec. 162.) In this instance the trial court was not requested to present these elements as proper subjects for consideration by the jury; on the contrary, plaintiffs' requested instruction given as the court's Instruction No. 6, specifically limited recovery to what the deceased would probably have earned and accumulated by his labor in his business or calling during the residue of his life and which would have been contributed to the benefit of the said plaintiffs, taking into consideration the age and health and probability of the length of the life of the said Anderson.'' In other words, plaintiffs requested and the court directed that recovery should be limited to loss of support.

At the time this action was commenced only two of the five **[11]** surviving children were minors, and one of these two arrived at majority within a year, and before this case was tried. The record discloses that up to the time of his conviction Anderson had not accumulated any property, at least his family had to be assisted by the county during the period of his imprisonment; that for some time prior to his death he had devoted his attention to farming operations, from which he derived a gross income of about $2,000 per year. The amount of necessary expense is not disclosed with any reasonable degree of accuracy, and beyond the fact that Anderson, with the assistance of the other members of his family, supported the family, the amount of his contribution does not appear definitely; but it can be said fairly that plaintiffs were entitled

to recover a substantial amount as distinguished from merely nominal damages.

Whatever may be said of Instruction 6, it was binding upon the jury, and since it limited recovery to the single item—loss of support—the verdict is excessive. The evidence respecting that item does not warrant a verdict for more than one-half of the amount returned.

The cause is remanded to the district court, with directions to grant a new trial unless within thirty days after the *remittitur* is filed in the office of the clerk of the district court, the plaintiffs' consent in writing that the amount of the judgment may be reduced to $5,000, with costs incurred in the trial court. If such consent is given, the judgment will be modified accordingly as of the date of the original judgment, and the order denying a new trial will then stand affirmed. Each party will pay his own costs of this appeal.

*Remanded with directions.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Galen and Stark concur.