**Robert WAGAR, Sr., Personal Representative of the Estate of Patrick W. Wagar, Plaintiff,**

v.

**Harold HASENKRUG et al., Defendants.**

**No. CV–79–37–GF.**

United States District Court, D. Montana, Great Falls Division.

Jan. 29, 1980.

James Zion, Helena, Mont., for plaintiff.

William Conklin, Dzivi, Conklin & Nybo, Great Falls, Mont., for defendants.

## MEMORANDUM

HATFIELD, District Judge.

Plaintiff, personal representative of the estate of Patrick W. Wagar, has brought this action under 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and under Montana negligence law, against defendant city police officers of Great Falls, Montana, for allegedly negligently causing the death of Patrick W. Wagar. This court has jurisdiction over the federal civil rights claims pursuant to 28 U.S.C. § 1343(3) and pendent jurisdiction over the state claim.

Defendant has moved to dismiss the civil rights allegations of plaintiff's complaint for failure to state a federal claim. Plaintiff has responded to defendant's motion and the matter is ripe for disposition.

The facts as alleged by plaintiff in his complaint are as follows: On or about July 9, 1977, defendant Great Falls City Police Officer Edward Sinnott was investigating a police matter in Great Falls when his vehicle was stopped by a motorist who indicated that there was a blind man underneath a nearby railroad trestle who appeared to be intoxicated or disabled and who was walking down the center line of the road, interfering with traffic. Officer Sinnott observed Patrick W. Wagar walking down the center line of the road in the line of traffic and made a radio report that he had an intoxicated man under observation who was walking in the middle of the road.

Defendant Officer Robert Stevens placed Patrick Wagar in Officer Sinnott's patrol car, after which Sinnott asked Wagar his name and home address. When Wagar did not appear to understand the questions and did not reply, Sinnott drove Wagar to the Great Falls Police Station.

Officer Sinnott entered the station to speak with defendant Lieutenant Harold Hasenkrug, the shift commander on duty. In the presence of defendants Officer Stevens and Officer Sharpe, Officer Sinnott told Lieut. Hasenkrug that he had a man in custody who was highly intoxicated, who could not respond to inquiries about his name and home address, who had been interfering with traffic and thereby constituted a danger to himself. Officer Sinnott asked if he could bring the man into the station and place him in protective custody. Lieut. Hasenkrug's responded that it was not departmental procedure to take persons in Patrick Wagar's condition into custody. Hasenkrug instructed Sinnott to put the man in the park and let him sleep it off.

Plaintiff alleges that the orders of Lieut. Hasenkrug appeared to the defendant police officers present to be in violation of both the statutes of the State of Montana and the internal policies of the Great Falls Police Department. Defendants Sharpe, Sinnott and Stevens, however, did nothing to assist Patrick Wagar.

Officer Sinnott helped Patrick Wagar from the patrol car and told him to leave. Wagar, however, could not leave of his own accord, and merely stumbled around the parking area of the police station before lying on a police station entry ramp. Defendants Sinnott and Hasenkrug then took Wagar to an area within view of the police station, and left him placed beneath a tree. The time was then approximately 5:30 P.M., July 9, 1977.

On several occasions during the evening of July 9, 1977, defendants Sinnott and Hasenkrug checked on Patrick Wagar. Both Officer Sinnott and Lieut. Hasenkrug informed the night shift commander of the location and condition of Patrick Wagar, and Lieut. Hasenkrug requested that the night shift commander have someone check Wagar's condition.

Although there was a thunder storm on July 9, 1977, from approximately 5:40 P.M. to 7:00 P.M., and intermittent rain with below normal cold and fog from about 12:00 A.M. to 5:00 A.M. on the morning of July 10, 1977, defendants Hasenkrug, Sinnott and other unidentified officers did nothing to assist Patrick Wagar other than periodically checking on his condition.

At approximately 1:50 P.M. on July 10, 1977, more than 20 hours after the officers had placed Patrick Wagar under the tree, Officer Sinnott observed that Patrick Wagar was dead. Wagar had died from pancreatitis.

Plaintiff alleges that defendants, as police officers, had an affirmative duty under Montana statutory and common law and under the Great Falls City Police Department policy to insure the treatment, safe custody or shelter of Patrick Wagar. The officers' alleged breach of that duty, while acting under color of state law, plaintiff claims, deprived Patrick Wagar of his life without due process of law, and subjected him to cruel and unusual punishment, in violation of 42 U.S.C. § 1983. Plaintiff also claims that the officers' actions violated 42 U.S.C. § 1985 (conspiracy to interfere with civil rights) and 42 U.S.C. § 1986 (failure to prevent conspiracy to violate civil rights), as well as their duties under § 53–24–303 M.C.A. to care for the decedent.

Defendants have moved to dismiss all of plaintiff's federal claims, asserting that the facts as set forth in plaintiff's complaint constitute a purely state negligence claim. The court shall consider plaintiff's federal claims seriatim.[1]

## I. *42 U.S.C. §§ 1985 and 1986*

Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims shall be dismissed. The language of 42 U.S.C. § 1985(1) (preventing United States officer from performing his duties) and 42 U.S.C. § 1985(2) (obstructing justice) is inapplicable to the facts as alleged by plaintiff. 42 U.S.C. § 1985(3) expressly makes defendants liable for conspiring to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." Despite this facially expansive statutory language, the Supreme Court has interpreted 42 U.S.C. § 1985(3) to proscribe only those conspiracies which are motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus . . . ." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

Nowhere in plaintiff's complaint does plaintiff allege that defendants' actions or inactions toward Patrick Wagar were motivated by an animus towards a class of which Patrick Wagar was a member. Plaintiff, in his brief in opposition to defendants' motion to dismiss, has proposed to amend his complaint to allege that Patrick Wagar was a member of a class of persons perceived to be "public drunks". Unlike racial or sexual animus, however, discrimination against perceived public drunks is not animus based on immutable characteristics for which the members of the alleged class have no responsibility, and therefore is not actionable under § 1985(3). *See, Carchman v. Korman Corp.*, 594 F.2d 354, 356 (3d Cir. 1979), *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979); *Arnold v. Tiffany*, 359 F.Supp. 1034, 1036 (C.D.Cal.1973), *aff'd on other grnds.*, 487 F.2d 216 (9th Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974).

While a person's membership of a sex or race is, in most cases, subject to little debate, the class of perceived public drunks is far more amorphous. While one's race and sex are not subject to change (short of major surgery), a person's membership in the class of perceived public drunks may change from night to night, depending on the festiveness of the occasion; and the class may at times include those who are normally most discreet and sober.

Even if those perceived to be public drunks did constitute a class under

---

1. If plaintiff states a claim that defendants violated Robert Wagar's rights under the federal civil rights laws, Robert Wagar's action would survive for the benefit of his estate. ". . . [A] United States district court, under 42 U.S.C. § 1988, may refer to the law of the state in which it sits in order to determine whether an action under section 1983 [or sections 1985 and 1986] for injury to the person survives." *Hall v. Wooten*, 506 F.2d 564, 566 (6th Cir. 1974). Montana law creates such a survival action. *See*, § 27–1–501, M.C.A.; *Anderson v. Wirkman*, 67 Mont. 176, 182, 215 P. 224.

§ 1985(3), however, plaintiff still does not state a claim under that subsection. The Montana statute which plaintiff claims defendant violated, § 53–24–303, M.C.A., deals only with aid and treatment of persons who appear to be intoxicated in public places. Plaintiff could not claim that Patrick Wagar was deprived of the equal protection of the law, or reasonably argue that police will not aid those perceived to be public drunks but will aid others under the statute; the statute by its terms applies only to those who are drunk in public.

█ Plaintiff's claim under 42 U.S.C. § 1986 for defendants' failure to prevent a known conspiracy to deprive Patrick Wagar of equal protection and equal privileges and immunities under the law is likewise deficient. An indispensible prerequisite for a 42 U.S.C. § 1986 claim is the existence of a conspiracy actionable under 42 U.S.C. § 1985. *Hahn v. Sargent*, 523 F.2d 461, 460 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976); *Hamilton v. Chaffin*, 506 F.2d 904, 914 (5th Cir. 1975). Dismissal of the § 1985 conspiracy claim, therefore, *ipso facto* requires dismissal of the § 1986 claim of failure to prevent a known § 1985 conspiracy.

## II. *42 U.S.C. § 1983*

█ To state a claim under 42 U.S.C. § 1983, it is essential that plaintiff allege facts showing, first, that defendants acted under color of state law and, second, that such actions subjected plaintiff's decedent to the deprivation of "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. These are the "only [two] elements which need to be present in order to establish a claim for damages under the Civil Rights Act." *Marshall v. Sawyer*, 301 F.2d 639, 646 (9th Cir. 1962).

Plaintiff, in his complaint, alleges facts which establish that defendants acted under color of state law. The facts, as alleged in plaintiff's complaint, are that defendants engaged in all of the complained actions or inactions toward Patrick Wagar on July 9 and 10, 1977, while defendants were police

officers of the City of Great Falls, ostensibly performing their official duties. Even though defendants' conduct toward Patrick Wagar was allegedly in violation of Montana law and police department policy, they acted as police officers under the authority of the police department, and thus under color of state law.

The defendants' conduct was engaged in under color of state law if they were clothed with the authority of the state and were purporting to act thereunder, whether or not the conduct complained of was authorized or, indeed, even if it was proscribed by state law.

*Marshall v. Sawyer, supra*, 301 F.2d at 646, citing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

The facts set forth by plaintiff in his complaint must also show, as the second and final essential element of this 42 U.S.C. § 1983 claim for damages, that defendants' conduct subjected Patrick Wagar to the deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States. *Marshall v. Sawyer, supra*. Plaintiff makes two claims of violations of Patrick Wagar's constitutional rights which merit discussion.

### a. *Cruel and Unusual Punishment*

Plaintiff claims that when defendants failed to provide medical treatment or shelter to Patrick Wagar in circumstances where such treatment or shelter was obviously called for, their actions constituted deliberate indifference to Wagar's known medical needs in violation of the Eighth Amendment's proscription against cruel and unusual punishment. *See, Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

The Eighth Amendment, however, is inapplicable to the facts of this case.

An examination of the history of the [Eighth] Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment

confirms that it was designed to protect those convicted of crimes.

*Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977).

■ Patrick Wagar had not been convicted of a crime and thus was not protected by the Eighth Amendment. The Court in *Ingraham* did note that some punishments, such as involuntary commitment to a mental or juvenile institution, may be sufficiently analogous to criminal punishments in the way they are administered so as to make the Eighth Amendment applicable. *See, Ingraham, supra*, 430 U.S. at 651 n.37, 97 S.Ct. at 1411 n.37. Under the facts as alleged in this case, however, Patrick Wagar was not the subject of anything analogous to a criminal prosecution and was not in the custody of defendant police officers as a result of being sentenced to a term of punishment.

[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Ingraham, supra*, 430 U.S. at 671–672 n.40, 97 S.Ct. at 1413; *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S.Ct. 1861, 1872 n.16, 60 L.Ed.2d 447.

Plaintiff's and defendants' extended debate in their briefs as to whether Patrick Wagar was in defendants' custody is therefore purely academic, the Eighth Amendment being inapplicable in either event.

b. *Right to Life*

The Fourteenth Amendment provides that no State shall "deprive any person of life . . . without due process of law . . . ." Plaintiff claims that defendants' failure to provide appropriate care for Patrick Wagar, in violation of their duties under state law, deprived Wagar of his life without due process of law. Defendants, however, claim that these facts alleged by plaintiff raise no constitutional issue, but merely present a state law tort question sounding in negligence. It is clear that if the facts plaintiff alleges raise issues of state tort law rather than federal constitutional or statutory issues, the plaintiff has failed to state a 42 U.S.C. § 1983 claim. *See, Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

Plaintiff alleges that defendants had a clear duty under Montana law and police regulations to either take Patrick Wagar into protective custody, take him to a place of shelter or take him to a public treatment facility or emergency medical service. Plaintiff alleges that defendants ignored their clear duty and that such failure to provide proper care resulted in Patrick Wagar's death. These allegations, if proven, would show that defendants, under color of state law, acted negligently or grossly negligently to cause the death of Patrick Wagar. The crucial inquiry is whether plaintiff's allegations of gross or simple negligence may support a § 1983 action for deprivation of life without due process of law.

The language of the statute itself does not require a plaintiff to prove that the defendant specifically intended to deprive the plaintiff of his constitutional rights. The statute, rather, imposes liability on a defendant who, under color of state law, "subjects, or causes to be subjected" any person within the jurisdiction of the United States to the deprivation of federal Constitutional or statutory rights. The Supreme Court has noted that the language of the statute "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961).

The aforementioned Ninth Circuit requirement of *Marshall v. Sawyer, supra*, is not that the defendant intended to deprive the plaintiff of his Constitutional rights, but that "the conduct complained of was engaged in under color of state law, and *that such conduct subjected the plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution* of the

United States." *Marshall v. Sawyer, supra,* 301 F.2d at 646 (emphasis added).

The Seventh Circuit Court of Appeals has applied the Ninth Circuit test of *Marshall v. Sawyer* in a case analogous to this case. The plaintiff in *Roberts v. Acres,* 495 F.2d 57 (7th Cir. 1974), like plaintiff herein, was the administrator of the estate of a person who allegedly had been killed as the result of the grossly negligent conduct of a "duly appointed and acting" local police officer.[2] The defendant in *Roberts* allegedly had shot the decedent without right or provocation. The decedent died from the injuries inflicted.

The court in *Roberts* found that the plaintiff had stated a claim under 42 U.S.C. § 1983 that the defendant, without due process of law, had deprived the decedent of his constitutional right to life. First, the court found that the defendant's conduct as an acting police officer was action taken under color of state law. The court then found that the plaintiff had alleged facts sufficient to show, if proven, that the defendant's conduct had subjected the decedent to a deprivation of his constitutional right to life.

The plaintiff further alleges that the shooting by defendant occurred while decedent was not committing any crime nor had he committed any offense prior thereto, nor was there any process issued out of any court of competent jurisdiction. As a direct result of the conduct, under color of law, of defendant, James Acres, the plaintiff's decedent was killed without being afforded due process or equal protection of the law as guaranteed

under the Fourteenth Amendment to the United States Constitution. It is readily apparent that the allegations contained herein set forth a deprivation of constitutional rights, for the Fourteenth Amendment prohibits state officials from taking life except in accordance with due process of law. . . . Therefore, the second element necessary to state a cause of action under the Civil Rights Act is met by the instant complaint.

*Roberts v. Acres, supra,* 495 F.2d at 59 (citations omitted).

The plaintiff in *Roberts* alleged that the police officer's negligent *action* deprived the decedent of his life without due process of law. Plaintiff herein, by contrast, alleges that defendant police officers' negligent *inactions* deprived Patrick Wagar of his life without due process of law. This distinction, however, is not significant in deciding the sufficiency of the § 1983 claim. 42 U.S.C. § 1983 is applicable whether the actions complained of are acts of commission or acts of omission. *Byrd v. Brishke,* 466 F.2d 6, 10 (7th Cir. 1972); *Azar v. Conley,* 456 F.2d 1382, 1387 (6th Cir. 1972).

The courts specifically have found that plaintiff administrators of decedents' estates have stated valid § 1983 claims where, as here, the conduct complained of was the defendants' alleged failure to perform a clear duty to the decedents under state law, and the specific constitutional right alleged to have been infringed was the decedents' Fourteenth Amendment right to life. *See, Spence v. Staras,* 507 F.2d 554 (7th Cir. 1974) (§ 1983 action for defendant state

---

2. The complainant in *Roberts* alleged facts amounting to grossly negligent conduct by the defendant police officer.

The facts alleged by plaintiff herein could certainly constitute grossly negligent conduct by defendant police officers.

The rule in the Ninth Circuit, however, is that an allegation of even simple negligence may support a 42 U.S.C. § 1983 claim.

. . . [A] deprivation of rights need not be purposeful to be actionable under § 1983.
. . . [T]he prisoner's rights which Navarette alleges to have been violated are fundamental and reasonably well-defined; his allegations that state officers negligently de-

prived him of these rights state a § 1983 cause of action.

*Navarette v. Enomoto,* 536 F.2d 277, 281, 282 (9th Cir. 1976), *reversed on other grounds, sub nom., Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

In reversing *Navarette,* the Supreme Court explicitly stated that it did not address the Ninth Circuit holding that an allegation of negligent deprivation of constitutional rights under color of state law is actionable under § 1983. *See, Procunier v. Navarette, supra,* 434 U.S. at 566 n.14, 98 S.Ct. at 862 n.14; *Baker v. McCollan,* 443 U.S. 137, 139, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

hospital employees' failure to perform their duty to protect hospital inmate from fatal attack by fellow inmates); *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974) (§ 1983 claim stated where the plaintiff contended that the defendant police officers' alleged failure to perform their duty to maintain a safe jail led to fatal beating of decedent prisoner).[3]

Plaintiff, in his complaint, has stated facts which, if proven, would establish both that defendant police officers engaged in conduct under color of state law and that that conduct subjected plaintiff's decedent to the deprivation of his life without due process of law. Plaintiff therefore has stated a § 1983 claim for deprivation of Patrick Wagar's constitutional right to life. Defendants' motion to dismiss this claim will be denied.

---

**3.** The decedents in both *Spence v. Staras and Hall v. Wooten* were inmates who could not voluntarily leave their places of confinement, and who thus depended entirely upon the respective defendants for their protection.

Patrick Wagar was technically free to seek assistance. Due to his allegedly obviously helpless physical condition, however, Wagar was no more free than the inmates to protect himself from harm.