Jesse HART, Plaintiff,

v.

**Kenny CASH, Deputy Sheriff of Johnson County, Arkansas; Elton Brown, Sheriff of Johnson County, Arkansas, Defendants.**

Civ. No. 84–2072.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

April 24, 1984.

John Wesley Hall, Jr., Little Rock, Ark., for plaintiff.

Robert L. Roddey, Hilburn, Calhoon, Forster, Vaughn, Harper & Pruniski, Ltd., North Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is another of the plethora of cases filed almost daily in this court in which plaintiffs who, if anything, have a cause of action which should be determined in state court, attempt to invoke the jurisdiction of the federal court by attempting to stretch past the point of breaking the jurisdiction of the court to hear civil rights causes of action authorized by 42 U.S.C. § 1983 and its jurisdictional predicate, 28 U.S.C. § 1343. For whatever the reason, as one distinguished judge has observed: "The reality is that today there is a mad rush to the federal courts." Aldisert, *Judicial Expansion of Federal Jurisdiction: A Federal Judge's Thoughts on Section 1983, Comity and the Federal Caseload*, 1973 L. & Soc. O. 557, 559. For the reasons set forth below, the court believes that, if the plaintiff has a cause of action in this case, it is one that not only should be but must be decided by the courts of Arkansas.

This is a case in which the plaintiff, a resident of Johnson County, Arkansas, has sued the defendant, Kenny Cash, a deputy sheriff of Johnson County, and the sheriff, Elton Brown, claiming that certain action or, more accurately, inaction, on the part of Kenny Cash, resulted in a ·deprivation of "due process of law and equal protection of the laws in violation of the Fourteenth Amendment."

It is alleged that on August 6, 1983, the plaintiff was injured about dark in a fall from a bluff at a swimming hole located in Johnson County, resulting in a fracture of his right lateral malleolus and a tear in the deltoid ligament of his right ankle. He alleges that he was helped to his car and was in great pain and unable to drive. Shortly thereafter, the defendant Cash, while on patrol, drove by and plaintiff allegedly requested that Cash take him home or to the hospital. It is alleged that Cash refused, saying that he was not allowed to do so. Instead, it is claimed that Cash offered to take the plaintiff to the courthouse, but that he would have to get to the hospital from the courthouse on his own. Plaintiff claims that defendant Cash encouraged him to stay with his vehicle so that its contents would not be stolen.

He claims that he stayed with his car, but was in great pain with his leg swelling badly. A few hours later, according to the complaint, defendant Cash returned and asked plaintiff about his condition and allegedly searched the trunk of his vehicle and asked plaintiff whether he had any drugs in his car. Plaintiff claims that he again asked for assistance.

He claims that the next morning he awoke in great pain and still could not drive. He walked and crawled to a nearby house and called for someone to come and get him who then took him to the hospital.

It is alleged that defendant Cash was acting in the course of his duties as Johnson County deputy sheriff at the time of the refusal to aid plaintiff and that he represented that department policy prohibited him from assisting plaintiff. It is claimed that, since defendant Brown is the sheriff, he must have been the one to promulgate such a policy and that, therefore, he is also liable.

In addition to plaintiff's attempt to state a section 1983 action, he attempts to allege a pendent state claim. The complaint alleges that defendants' act in refusing to transport plaintiff home or to the hospital, or to assist him in getting transportation to get medical help when they knew or reasonably should have known he needed medical care, breached a duty owed to him. He prays for $25,000.00 compensatory damages, $75,000.00 punitive damages, costs, expenses and attorney's fees.

As the court has already indicated, it has a great deal of concern about the frequent attempts to invoke federal court jurisdiction in cases where the parties bringing the lawsuit have, if anything, a state court claim. It should be remembered that the drafters of our Constitution, wisely in the court's view, intended for federal courts to be courts of limited jurisdiction. As is stated in 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3522 at 44:

"It is a principle of first importance that the federal courts are courts of limited jurisdiction. Most state courts are courts of general jurisdiction, and the presumption is that they have jurisdiction over a particular controversy unless a showing is made to the contrary. The federal courts, on the other hand, cannot be courts of general jurisdiction. They are empowered to hear only those cases that (1) are within the judicial power of the United States, as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by the Congress. (citing cases.)

As that treatise further points out, at p. 45:

"... the rule is well settled that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of that court. The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. Thus, the facts showing the existence of jurisdiction must be affirmatively alleged in the complaint." (citing cases.)

The reason for the rush to federal court noted by Judge Aldisert, *supra,* and numerous other authorities, is not clear. It is obvious that state court judges are selected from the same source as federal court judges, and there is certainly no indi-

cation, at least in Arkansas, that state courts and state court judges are not at least as competent to try matters such as the one alleged in this complaint as are the federal courts. In spite of this, it is only necessary to make a cursory examination of the cases arising under 42 U.S.C. § 1983 to determine that litigants have attempted to use that section to invoke federal court jurisdiction in cases in which neither the drafters of the Constitution nor of the 1871 Civil Rights Act would, in their wildest dreams, have envisioned. It seems that almost any time a citizen is involved with the state or local authorities, be it a termination or disciplining of an employee, an adverse ruling of a zoning board, city council, school board, or local civil service commission, or an arrest by a police officer, ingenuous counsel attempt to claim that the party who believes he has been wronged has a "federal case" by reason of the provisions of section 1983.

Be that as it may, the defendants have, in this case, filed a motion to dismiss under the provisions of Rule 12(b) of the Federal Rules of Civil Procedure. The court recognizes that there are substantial hurdles that must be overcome before a trial court may grant such a motion. The law clearly is that the complaint shall be construed in the light most favorable to plaintiff and its allegations taken as true. See the numerous cases cited at footnote 46 of 13 Wright, Miller & Cooper, supra, at 594. Such a motion is viewed with disfavor and is rarely granted. See the cases cited at footnote 64 of 13 Wright, Miller & Cooper, supra, at 598. A Rule 12(b)(6) motion will be granted only in the unusual case in which the allegations of the complaint show that there is some insuperable bar to relief—in other words, only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim. See cases cited in footnotes 83 and 84 of 13 Wright, Miller & Cooper, supra, at 604.

In spite of the heavy burden placed on the court by such cases, the court believes that, if there was ever a case where a Rule 12 motion should be granted, this is it. In the first place, the court believes it to be extremely doubtful that the complaint states a cause of action, even under state law. It should be noted that defendants deny that the occurrences alleged in the complaint took place, but it is recognized that the court must assume that they did in ruling on a Rule 12 motion. It should also be noted that it is not even alleged that the deputy sheriff did anything other than decline to transport the defendant to a hospital upon request. While, if true, that might be reprehensible conduct, in the court's view it is extremely doubtful that it is sufficient to give the plaintiff a cause of action against the deputy sheriff and sheriff.

The attorneys for both parties have briefed the issues raised by the motion to dismiss, and neither cites an Arkansas case directly on point, and the court has found none. However, as Professor Prosser notes in his work on the law of torts, the law has persistently refused to recognize the moral obligation of common decency and common humanity to come to the aid of another human being who is in danger. W. Prosser, Law of Torts, § 56 (4th ed.). Neither party has cited any basis for imposing upon a law enforcement officer, absent some special relationship between the parties, any greater duty to become a "Good Samaritan" than that imposed upon ordinary citizens, and the court is extremely doubtful that such a duty exists.

In support of the proposition that such a duty is owed by a law enforcement officer, plaintiff has cited ABA STANDARDS FOR CRIMINAL JUSTICE, The Urban Police Function, Standard 1–2.2 (2d ed. 1980); CHANDLER, THE POLICEMAN'S ART at 39 (1922); HOLCOMB, THE POLICE AND THE PUBLIC at 33–34 (1950); and FOLLEY, AMERICAN LAW ENFORCEMENT at 171–72 (1980); works which generally say, in a nutshell, that the public expects police officers to be good police officers and to render assistance to the public. While these works appear to be admirable discussions of various social arguments that police officers should be good police officers, they do not even arguably,

in the court's view, impose upon the defendants in this case the duty which plaintiff seeks to have the court impose.

In short, the court believes it to be highly unlikely that plaintiff has stated a cause of action under Arkansas law because no duty was owed by the deputy sheriff to him in this instance, but, even if it is assumed for the sake of argument that such a cause of action has been stated, the court believes that it is obvious that plaintiff has failed to state a "federal case" and that his cause of action, if any, should be and must be tried in state court.

In order for the plaintiff to have a cause of action under 42 U.S.C. § 1983, he must not only allege that he has been wronged, but that he has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, and that such deprivation must have been made under color of state law, regulation, custom, or usage. Assuming that the allegations of the complaint are true, as this court must, is what was done to plaintiff a deprivation of any constitutionally guaranteed right, privilege or immunity?

In this respect, at page 8 of his brief, plaintiff raises this pertinent question as follows: *"Query:* Did defendant Cash subject plaintiff or cause plaintiff to be subjected to a denial of due process or equal protection of the laws by his refusal to assist?" He then cites *Wagar v. Hasenkrug,* 486 F.Supp. 47 (D.Mont.1980), and *Huey v. Barloga,* 277 F.Supp. 864 (N.D.Ill. 1967), and then concludes: "By leaving plaintiff and refusing to assist him in getting medical treatment for his condition, defendant Cash and Sheriff Brown violated plaintiff's right to due process of law."

In the court's view, neither of these cases support the quantum leap necessary to jump from plaintiff's "Query" to his conclusion. In *Wagar, supra,* police officers took a drunk man into custody and took him to the station house. After keeping him for a short time, they laid him under a tree to sleep it off. It was a cold rainy night, and, although officers checked on him periodically, he died of exposure the next day.

The court believes that that case is not on point, even if it were binding on this court, which it is not. In the first place, the *Wagar* case is not one in which the police officers simply failed to act. They affirmatively acted. They took the decedent into custody and, after keeping him at the station house for a short time, laid him under a tree in the rain. The court believes that the fact that there was such affirmative action in that case makes a great deal of difference. Surely, police officers may not take a person into custody and then endanger his life by taking action such as was done in that case, and all that the trial court held was that such affirmative action, when coupled with the allegations of the complaint, stated a cause of action which would survive a Rule 12 motion.

In so ruling, the court stated:

Plaintiff alleges that defendants had a clear duty under Montana law and police regulations to either take Patrick Wagar into protective custody, take him to a place of shelter or take him to a public treatment facility or emergency medical service. Plaintiff alleges that defendants ignored their clear duty and that such failure to provide proper care resulted in Patrick Wagar's death.

Thus, not only did the police officers in *Wagar* take him into custody and then affirmatively endanger his life, it was alleged that such action was a clear violation of Montana law and regulations of the police department. That is a far cry from what is alleged in this case.

The court is at a loss to understand how plaintiff believes that *Huey, supra,* supports his contention. He says that it is "a somewhat similar case ... involving a failure to act to alleviate a probable harm when the officers were apprised of a potential for harm." Admitting that there is language in that case from which this conclusion can be drawn, it does not support plaintiff's position in this case. In the first place, the allegations of the complaint in *Huey* state a traditional section 1985 cause of action. It was alleged that plaintiff's

decedent, a young black college student, was killed by four whites in Cicero, Illinois, while he was attempting to obtain employment in that town, and that the death was caused when the defendants, trustees, employees and agents of the Town of Cicero "with knowledge of the possibility of racial disorders, conspired to deprive Negroes, as a class, of equal protection of the laws by neglecting to provide for their personal safety." The court held that such allegations sufficiently stated a claim that the officers had acted or failed to act pursuant to a conspiracy and constituted state action under color of state law. The court went on to hold that the complaint had not stated a cause of action because the allegations were merely conclusory and did not allege any specific acts or omissions by defendants as the court believed section 1985 required. That case simply does not support plaintiff's attempt to state a federal cause of action in this case.

Simply stated, the court does not believe that the allegations of the complaint state a cause of action for which this court has subject matter jurisdiction, even if a cause of action is stated under the law of Arkansas, a proposition which, as indicated above, appears to be extremely doubtful. For this reason, a separate order will be entered granting defendants' motion to dismiss.