Joan F. STEPHENS, Plaintiff and Respondent,

v.

Brent HENDERSON, dba Classic Skating Center, and John Doe, Defendants and Appellants.

No. 860440.

Supreme Court of Utah.

Aug. 13, 1987.

Carman E. Kipp, Salt Lake City, for defendants and appellants.

Ray Harding Ivie, Ray Phillips Ivie and James G. Clark, Provo, for plaintiff and respondent.

HOWE, Justice:

This is an appeal from a judgment on a jury verdict in a negligence action. Defendant Brent Henderson dba Classic Skating Center asserts that the trial judge committed reversible error in refusing to give certain jury instructions requested by him and in refusing to apply the provisions of the Liability Reform Act. Utah Code Ann. §§ 78-27-37 to -43 as amended in 1986.

On November 8, 1984, plaintiff Joan Stephens injured her wrist when she fell after being tripped by an unknown skater while she was roller skating at Classic Skating Center in Orem, Utah. Stephens filed suit, naming Henderson and "John Doe" as defendants. Trial was held on July 29, 1986. At the close of plaintiff's case, Henderson's counsel moved to apply the Liability Reform Act, which became effective April 28, 1986. Application of the Act would have held each defendant liable for damages only in proportion to his own individual fault. The trial court denied the motion. The court also refused to give certain instructions requested by Henderson. The jury returned a verdict for plaintiff in the amount of $17,357.92, finding John Doe 75 percent negligent, Henderson/Classic Skating Center 25 percent negligent, and plaintiff free from any negligence. On August 15, 1986, plaintiff executed against Henderson for the entire amount of the judgment.

In 1986, the legislature repealed the Comparative Negligence Act, Utah Code Ann. §§ 78-27-37 to -43, and replaced it with the Liability Reform Act. Utah Code Ann. §§ 78-27-37 to -43, as reenacted. The Liability Reform Act did not expressly direct that any of its provisions should operate retroactively. Section 78-27-40 of that Act provides in part: "[T]he maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant." In contrast, the Comparative Negligence Act provided for joint and several liability, that is, each defendant was liable to the plaintiff for the full amount of the plaintiff's damages.

Henderson contends that the Liability Reform Act, eliminating joint and several liability, should have been applied in this case. On the other hand, Stephens asserts that doing so would have effected an impermissible retroactive result.

■ The starting point for our analysis is Utah Code Ann. § 68-3-3, which provides: "No part of these revised statutes is retroactive, unless expressly so declared." The application of a statute is retroactive if it alters the substantive law on which the parties relied. *See Docutel Olivetti Corp. v. Dick Brady Systems, Inc.,* 731 P.2d 475 (Utah 1986); *see also Petty v. Clark,* 113 Utah 205, 192 P.2d 589 (1948); *cf. Archer v. Utah State Land Board,* 15 Utah 2d 321, 392 P.2d 622 (1964). Law is substantive if it "creates, defines and regulates the rights and duties of the parties and ... may give rise to a cause for action, as distinguished

from adjective law which pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective." *Petty v. Clark*, 192 P.2d at 593–94. Other jurisdictions have held similar statutes to be substantive. *Russell v. Superior Court*, 185 Cal.App.3d 810, 230 Cal.Rptr. 102 (Cal.App. 1st Dist.1986) (holding Proposition 51, which eliminated joint and several liability for noneconomic damages, to have prospective effect only); *see also United States Fidelity & Guaranty Co. v. Park City Corp.*, 397 F.Supp. 411, 414–15 (D.Or. 1973) ("[T]he relationship between the parties is fixed as of the date of the accident. It is at that time that these parties became joint tortfeasors. Their rights and obligations as among themselves are governed by the then existing substantive law. . . ."), *aff'd*, 526 F.2d 1120 (9th Cir.1975).

In the instant case, the Comparative Negligence Act was the substantive law defining, in part, the relationship between the parties at the time of the accident. Section 78–27–41 provided, "Nothing in this act shall affect: (1) the common-law liability of the several joint tort-feasors to have judgment recovered, and payment made, from them individually by the injured person for the whole injury." The Liability Reform Act redefines the relationship between the plaintiff and the joint tort-feasors. Since the Act changes the substantive law in effect when plaintiff's cause of action arose, its application would have retroactive effect. That being the case, section 68–3–3 dictates that it may not be applied unless expressly so directed by the legislature. The Liability Reform Act contains no such express direction.

■ We note Henderson's argument for an alternate method to determine if a legislative act is retroactive. He asserts that there is no retroactive effect if a new statute takes effect before judgment is entered in the case. However, we have long held that a party may not be deprived of a right simply because judgment has not yet been entered. To paraphrase our holding in *Buttrey v. Guaranteed Securities Co.*, 78 Utah 39, 300 P. 1040 (1931), a case involving the repeal of a statute holding corporate directors individually liable to stockholders, cases which hold that a statutorily created right can be destroyed at any time until final judgment because the right has not yet vested, are in error. *Id.* at 1045. To allow the substantive law in a case to be changed at any time up until entry of final judgment would allow a plaintiff to be effectively deprived of a cause of action. *Campbell v. Stagg*, 596 P.2d 1037 (Utah 1979), cited by Henderson as authority, is inapposite. In that case, we were presented with the question whether it was permissible to include interest on a judgment for a plaintiff's damages from the time of the injury, even though the statute allowing such interest became effective after the accident giving rise to the injuries. In holding that result permissible, we noted that the legislature "explicitly directed all [future] judgments to add interest computed from the time of the act giving rise to the accident." *Id.* at 1042. There is no analogous statutory language in the Liability Reform Act.

Our determination that application of the Liability Reform Act would be impermissibly retroactive in this case is reinforced by our decision in *Brunyer v. Salt Lake County*, 551 P.2d 521 (Utah 1976). In that case, we were confronted with whether the Comparative Negligence Act should apply to allow contribution between tort-feasors who had negligently injured the plaintiff before the effective date of the act. We held that since the right to contribution arose by statute after the accident, the statute creating the right could not apply. Our holding in that case was reiterated in *Unigard Insurance Co. v. City of LaVerkin*, 689 P.2d 1344 (Utah 1984), where we stated that *Brunyer* stands for the proposition that "the act was not applicable in any respect to any liability for injuries occurring prior to the effect [sic] date of the statute." *Id.* at 1347 n. 3. A statute eliminating joint and several liability may not be applied to injuries occurring prior to its effective date. The injuries in this case occurred on November 8, 1984; the Liability Reform Act was not effective until April 28, 1986. Therefore, the trial court was

correct in holding that the Liability Reform Act did not apply.

■ Henderson next contends that the trial court erred in failing to give his requested jury instruction No. 21:

There is a legal principle, commonly referred to by the term "assumption of risk", which is as follows:

One is said to assume a risk when he voluntarily manifests his assent to a dangerous condition or to the creation or maintenance of a dangerous condition and voluntarily exposes himself to that danger, or when he knows, or in the exercise of ordinary care would know, that a danger exists in the condition of the property and voluntarily places himself or remains within the position of danger.

If you find that Joan Stephens assumed the risks which were known by her or which should have been known by her concerning the dangers associated with roller skating, she would be guilty of negligence.

We held in *Jacobsen Construction Co. v. Structo-Lite Engineering*, 619 P.2d 306 (Utah 1980), that assumption-of-risk language is not appropriate under our comparative negligence statutes. As was illustrated by that case, assumption of the risk in its secondary sense, as used in the requested instruction, is to be treated as contributory negligence. *Id.* at 312. The jury was given instructions on contributory negligence; therefore, the trial court was correct in refusing defendant's requested instruction No. 21.

■ Henderson lastly contends that the trial court erred in refusing to give his requested instruction No. 27, which read:

Should you determine that the plaintiff was deliberately knocked down, you are instructed that a roller skating proprietor has a duty to guard roller skaters against assaults by fellow roller skaters if the circumstances are such that an ordinarily prudent person might reasonably anticipate the danger of such assaults and knew or should have known of the tendency of a fellow skater to assault other patrons of the establishment.

Henderson points out that plaintiff's friend who accompanied her to the roller rink testified that the unknown skater, after knocking plaintiff down, yelled, "I scored another." She further testified that she had seen him knock down another skater moments before he made contact with plaintiff. Henderson argues that this testimony indicates that plaintiff was intentionally assaulted and that consequently requested instruction No. 27 was necessary to instruct the jury as to the duty Henderson owed plaintiff to protect her against intentional torts by other patrons.

We find no prejudicial error in the refusal to give this instruction. It is true, as asserted by Henderson, that a proprietor, to be held liable, must have some cause to believe that one patron may assault another patron. *Gustaveson v. Gregg*, 655 P.2d 693 (Utah 1982). Nevertheless, under the facts here such an instruction was not required since the instructions given covered this subject. Henderson had two floor guards assigned to monitor the skating and to warn or remove those skaters who indulged in unsafe practices, such as racing, pushing, or rowdy behavior. The instructions given by the court informed the jury that it was the theory of plaintiff's case that Henderson was negligent because his floor guards failed to properly supervise the skating of other patrons of the rink. The jury was further instructed that the proprietor of a public amusement has the duty to use ordinary care and diligence to protect patrons, but this duty does not extend to becoming an insurer of their safety. Negligence was defined. Under the facts of this case, Henderson's duty to protect plaintiff from those who would intentionally trip her was not different than the duty to protect her from those who would negligently or recklessly run into her. The floor guards were there to monitor all skaters. Requested instruction No. 27 was properly refused as surplusage since other instructions adequately covered the duty owed to plaintiff to protect her from the errant conduct of other skaters, irrespective of how that conduct might be characterized. This case is unlike *Gustaveson v.*

*Gregg, supra,* where the desk clerk in a bowling alley who had no responsibility to monitor the conduct of patrons had no reason to believe that an argument might erupt between two patrons and that one might punch the other in the face. In that case, we held the proprietor not liable as a matter of law. In the instant case, the peril was foreseeable, even anticipated, and floor guards were assigned to watch for and immediately stop the very conduct which injured plaintiff.

Affirmed.

HALL, C.J., DURHAM and ZIMMERMAN, JJ., and GREGORY K. ORME, Court of Appeals Judge, concur.

STEWART, Associate Chief Justice, does not participate herein; ORME, Court of Appeals Judge, sat.