**WASHINGTON NATIONAL INSURANCE COMPANY, an Illinois corporation, Plaintiff and Appellee,**

v.

**SHERWOOD ASSOCIATES, a Utah limited partnership; The Ridge Athletic Club, Inc., a Utah corporation; Darrell D. Tanner, individually, and as Trustee of the Tanner Family Trust; Jason Tanner, an individual; Tracy A. Tanner McDonald, an individual; Linley A. Tanner, an individual; Bradley H. Tanner, an individual, et al., Defendants and Appellants.**

No. 890502–CA.

Court of Appeals of Utah.

June 19, 1990.

**666**

Jackson Howard and Leslie Slaugh, Provo, for defendants and appellants.

Clark W. Sessions and Cynthia K. Cassell, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Darrell Tanner and The Ridge Athletic Club [1] (hereinafter collectively referred to as "Tanner") appeal from a partial summary judgment and decree of foreclosure entered in favor of Washington National Insurance Company ("Washington"). We reverse and remand.

In December of 1979, Sherwood Associates ("Sherwood") executed a $1.2 million note in favor of Bettilyon Mortgage Loan Company ("Bettilyon"). This note was secured by a deed of trust on real property commonly known as The Ridge Athletic Club. Subsequently, Bettilyon assigned its interest in the note to Washington. Darrell Tanner purchased The Ridge Athletic Club in December of 1982, and assumed the obligations under the note and trust deed in January of 1983.

Tanner ceased making payments under the note in May 1987. On November 30, 1987, Washington accelerated the note pursuant to its contractual rights. Washington demanded that Tanner pay the note in

full by December 7, 1987, to cure the default. Tanner responded by tendering only the amount that was delinquent under the note. Washington rejected the tender.

Ultimately, Washington filed this action and subsequently filed a motion for partial summary judgment to foreclose on the property. The district court held that Tanner was required to pay the entire amount due under the note in order to cure his default and that he had failed to do so and thus granted Washington's motion. Tanner appeals from the district court's entry of this foreclosure judgment.

Summary judgment should be granted under Utah Rule of Civil Procedure 56(c) "only when it is clear from the undisputed facts that the opposing party cannot prevail." *Lach v. Deseret Bank,* 746 P.2d 802, 804 (Utah Ct.App.1987). "When reviewing an appeal from summary judgment, we construe the facts and view the evidence in the light most favorable to the losing party." *Parents Against Drunk Drivers v. Graystone Pines Homeowners' Assoc.,* 789 P.2d 52, 54 (Utah Ct.App.1990). *See also Geneva Pipe Co. v. S & H Ins. Co.,* 714 P.2d 648, 649 (Utah 1986);, *Lucky Seven Rodeo Corp. v. Clark,* 755 P.2d 750, 752 (Utah Ct.App.1988). "If ... we conclude that there is a dispute as to a genuine issue of material fact, we must reverse the grant of summary judgment and remand for trial on that issue." *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987).

## RETROACTIVE APPLICATION OF SECTION 57–1–31

In judicial foreclosures prior to 1985, a debtor in default could pay the amount in default under the note at any time prior to foreclosure and thereby cure the default and avoid foreclosure. Utah Code Ann. § 57–1–31 (1981). In 1985, section 57–1–31 was amended, deleting the phrase which had allowed a debtor in a judicial foreclosure proceeding to cure the default by

---

**1.** Darrell Tanner and The Ridge Athletic Club are the only defendants that actively partici-
pated in the proceedings subject to this appeal.

simply paying the amount in default.[2] Thus, following this amendment, no statutory rights to cure remained under section 57–1–31 if the beneficiary chose to enforce his or her rights by judicial foreclosure.

Tanner bought the property and assumed the subject loan three years prior to the 1985 amendment of section 57–1–31. However, the judicial foreclosure action was brought in 1987, after the amendment. Tanner assumed that the pre-amendment version of the statute applied and thus tendered to Washington the amount in default.[3] Washington rejected the tender, arguing that the current version of section 57–1–31 applied, and thus, that Tanner had to pay the entire amount of the debt in order to cure. The district court agreed with Washington's position.

The district court reached the correct conclusion only if the 1985 amendment to section 57–1–31 applies to this contractual transaction. In Utah, a statute generally cannot be given retroactive effect unless the legislature expressly declares such an intent in the statute. Utah Code Ann. § 68–3–3 (1986) provides that "[n]o part of these revised statutes is retroactive, unless expressly so declared." *See also Madsen v. Borthick*, 769 P.2d 245, 253 (Utah 1988); *Stephens v. Henderson*, 741 P.2d 952, 953 (Utah 1987); *In re J.P.*, 648 P.2d 1364, 1369 & n. 4 (Utah 1982).

The legislature did not state that section 57–1–31, as amended in 1985, should be applied retroactively. Thus, under the general rule, the 1985 amendment to section 57–1–31 should not be applied to this contractual transaction entered into before the amendment's adoption.

Washington relies on an exception to the general rule, claiming that even without express legislative intent a statute may be applied retroactively if it affects only procedural and not substantive rights. *Pilcher v. State*, 663 P.2d 450, 455 (Utah 1983); *In re J.P.*, 648 P.2d at 1369 n. 4; *Foil v. Ballinger*, 601 P.2d 144, 151 (Utah 1979). In *Pilcher*, the Utah Supreme Court explained this exception:

> A contrary rule applies, however, where a statute changes only procedural law by providing a *different mode or form of procedure for enforcing substantive rights.* Such remedial statutes are generally applied retrospectively to accrued or pending actions to further the Legislature's remedial purpose.... *"[P]rocedural statutes enacted subsequent to the initiation of a suit which do not enlarge, eliminate, or destroy vested or contractual rights apply not only to future actions, but also to accrued and pending actions as well."*

*Pilcher*, 663 P.2d at 455 (emphasis added) (quoting *State v. Higgs*, 656 P.2d 998, 1000

---

2. Utah Code Ann. § 57–1–31 states, in pertinent part (the portion deleted by the 1985 amendment is included in brackets):

> [T]he trustor or his successor in interest in the trust property or any part thereof or any other person having a subordinate lien or encumbrance of record thereon or any beneficiary under a subordinate trust deed, at any time within three months of the filing for record of notice of default under such trust deed, if the power of sale is to be exercised, [or, otherwise at any time prior to the entry of the decree of foreclosure,] may pay to the beneficiary or his successor in interest the *entire amount then due under the terms of such trust deed* ... other than such portion of the principal as would not then be due had no default occurred, and thereby cure the default theretofore existing....

Utah Code Ann. § 57–1–31(1) (1990). Washington argues that even before its amendment, this section did not apply if the creditor chose to proceed by judicial foreclosure. We do not agree as the statute specifically provided for

alternative procedures to cure—one if the power of sale was exercised and another if a judicial foreclosure action was commenced.

3. Tanner on appeal claims that even if the 1985 amendment applies, his tender was sufficient because it was made before Washington elected to proceed with its judicial foreclosure. He mistakenly relies upon section 57–1–31 to support his argument. The 1985 amendment eliminated the ability to cure in judicial foreclosure cases. The provisions in section 57–1–31 which still speak in terms of curing the default only apply in non-judicial foreclosure cases. "[T]he trustor [may cure] any time within three months of the filing for record of notice of default under such trust deed, *if the power of sale is to be exercised....*" Utah Code Ann. § 57–1–31 (1986) (emphasis added). It is the ultimate decision of the creditor as to which procedure to use to enforce his or her rights which controls whether section 57–1–31 applies, not when the tender is made.

(Utah 1982)); *see also Carlucci v. Utah State Indus. Comm'n,* 725 P.2d 1335, 1337 (Utah 1986).

█ Thus, we must determine whether the 1985 amendment of section 57–1–31 affects a substantive right or merely a procedural one[4] in order to resolve whether the amended statute applies to this foreclosure action. The Utah Supreme Court focused on the "definitional" distinction between a substantive and procedural change to a statute in an early case, *Petty v. Clark,* 113 Utah 205, 192 P.2d 589 (1948). In *Petty,* the court was asked to assess whether an amendment to a statute which made a jury advisory in trials based on equitable contract claims was substantive or procedural. The court found the amendment was procedural,[5] stating:

> The parties, in making their contract, did not rely on the provisions of the statute before it was amended, the amendment does not change the meaning of the contract at all, nor does the amendment deprive either party of any right which he would have had if the amendment had been enacted before the contract was made.

*Id.,* 192 P.2d at 593. The *Petty* court went on to define a substantive change[6] in the law.

---

4. Commentators have criticized the use of this "definitional distinction" in determining retroactive application of statutes because courts have had great difficulty in applying the test in a consistent manner. Note, *Retroactive Application of Statutes: Protection of Reliance Interests,* 40 Me.L.Rev. 183, 201 (1988). We agree. The confusion results from a failure to distinguish between cases decided under a "contracts clause" analysis, as opposed to Utah Code Ann. § 68–3–3 (1986) and from the difficulty in using the same concepts to discuss substantive changes in the area of contract as contrasted to tort law.

5. The narrow "procedural" exception to the rule against retroactive application of statutes is best understood by reviewing the few cases where the Utah Supreme Court has found the statutory change procedural and thus held that it could be applied retroactively: *Pilcher v. State,* 663 P.2d 450, 455–56 (Utah 1983) (the court found that statutes enacted to facilitate collection of prior child support debts were procedural because they did not affect the rights of the parent when the support was awarded, but merely instituted a means of collecting the support); *Foil v. Ballinger,* 601 P.2d 144, 151 (Utah 1979) (the court held that amendments to a statute requiring notice of intent to commence a malpractice action were procedural because they merely clarified the legislature's previous intent which had been questioned by previous case law); *Petty v. Clark,* 113 Utah 205, 192 P.2d 589, 593 (Utah 1948) (the court applied an amendment to a foreclosure statute which provided that a jury would only be advisory in equitable suits because the court found the change affected only the legal machinery for enforcing a right). Statutes have been held to be procedural or remedial and thus outside the prohibition of retroactive application of section 68–3–3 where the change only affects the judicial machinery for enforcing substantive rights or where the change simply clarified the legislature's previous intent.

6. Utah courts have usually held that a statutory change affected substantive rights and therefore have refused to apply it retroactively. *Worthington & Kimball v. C & A Dev. Co.,* 777 P.2d 475, 478 (Utah 1989) (the court held that an amendment which deleted the requirement for a verification on a mechanics' lien would not be applied to a lien filed before its passage); *Madsen v. Borthick,* 769 P.2d 245, 253 (Utah 1988) (the court decided that a statutory provision which eliminated the Department of Financial Institutions Commissioners' liability as individuals for gross negligence was a change in the substantive law); *Schultz v. Conger,* 755 P.2d 165, 166 (Utah 1988) (the court held that a notice requirement added to the Governmental Immunity Act would not apply retroactively); *Stephens v. Henderson,* 741 P.2d 952, 953–55 (Utah 1987) (the court refused to apply the Liability Reform Act, which eliminated joint and several liability, to injuries occurring before its effective date); *Carlucci v. Utah State Indus. Comm'n,* 725 P.2d 1335, 1336–37 (Utah 1986) (the court held that the creation of the Default Indemnity Fund affected substantive rights); *In re Disconnection of Certain Territory,* 668 P.2d 544, 548–49 (Utah 1983) (the court refused to apply an amended statute governing municipal disconnections because the amendment created new factors to be considered and thus changed the "substantive criteria for decision"); *In re J.P.,* 648 P.2d 1364, 1369–70 & n. 4 (Utah 1982) (the court refused to apply an amendment to a statute under which parental rights could be terminated because the court found it did not fit the narrow procedural exception); *Brunyer v. Salt Lake County,* 551 P.2d 521, 522 (Utah 1976) (the court held that a contribution statute established a new duty and thus could not apply it retroactively); *Okland Constr. Co. v. Indus. Comm'n,* 520 P.2d 208, 210–11 (Utah 1974) (the court refused to evaluate a worker's compensation claim under an amended statute which extended the period for compensation to an injured employee, but instead applied the law that existed at the time of the employee's accident).

Substantive law is defined as the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause for action, as distinguished from adjective law which pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective.

*Id.* at 593–94.

In this contractual dispute, we begin our analysis of whether the change to section 57–1–31 is substantive or merely procedural with the premise that a contract implicitly contains the laws existing at the time it was entered.[7] *Beehive Med. Elecs., Inc. v. Indus. Comm'n,* 583 P.2d 53, 60 (Utah 1978) (citing *Edwards v. Kearzey,* 96 U.S. 595, 601, 24 L.Ed. 793 (1878) (holding that contracts embrace laws which affect their validity, construction, discharge, and enforcement)); *Quagliana v. Exquisite Home Builders, Inc.,* 538 P.2d 301, 308 (Utah 1975); *Portland Sav. Bank v. Landry,* 372 A.2d 573, 575–76 (Me.1977).

If a statutory amendment changes the contractual rights and obligations of the parties, it is substantive. *Petty,* 192 P.2d at 593. However, if the amendment merely affects the legal machinery by which parties enforce their rights under the contract, *Pilcher,* 663 P.2d at 455, or simply clarifies the legislature's previous intentions, *Foil,* 601 P.2d at 151, it is procedural.[8]

Washington claims that because the statutory amendment affects only Tanner's rights to cure his contractual default, it involves a remedy, is thus "remedial," and can be applied retroactively.[9] We disagree. A change in a statutory remedy or defense is a substantive change if it affects the rights and duties of the parties. Several Utah cases illuminate this point.

In *Brunyer v. Salt Lake County,* 551 P.2d 521 (Utah 1976), the Utah Supreme Court examined the issue of whether a statute creating the right to contribution among joint tortfeasors applied retroactively. Whether this statute created a new remedy or a new cause of action available to joint tortfeasors is debatable. What is important is that the statute created a new substantive right. Thus, the court found the statutory modification could not be applied retroactively because "[t]he contribu-

---

**7.** Washington claims the parties' contract allowed acceleration and thus under the parties' agreement, Tanner was required to pay the entire amount due after acceleration in order to cure his default. Washington asserts the change in section 57–1–31 only allows the parties' contractual intent to be carried out. We agree that under the parties' contract, Washington could accelerate. However, under the then-existing law, Tanner could nevertheless statutorily override Washington's contractual right and cure his default by payment of only the amount in default. We assume the parties contracted with knowledge of their existing legal rights.

**8.** Washington claims that the 1985 amendment to section 57–1–31 does not interfere with the constitutional right of contract and thus it can be applied retroactively, citing article I, section 10 of the United States Constitution which provides that "[n]o State shall ... pass any ... law impairing the obligation of contracts," and article I, section 18 of the Utah State Constitution. Tanner did not make a constitutional argument at the district court nor does he assert this claim on appeal. This case is not a "contracts clause" case but rather one of statutory construction. We decide only whether the statutory prohibition against retroactive application of statutory changes found in Utah Code Ann. § 68–3–3 (1986) should be applied in this case. Thus, we do not directly rely on the constitutional authority cited by Washington.

**9.** Prior case law has somewhat confused the distinction between the terms "procedural," "remedial," and "remedy." In dealing with the rule contained in section 68–3–3 that statutes will be applied retroactively only if they affect procedural or remedial rights, "remedial" is not synonymous with remedy. "Remedial" means two things. First, a change in the judicial procedure or machinery available to pursue a claim and, second, a clarification of prior legislative intent. *See* note 6, *supra.* The distinction between remedy and cause of action has usually been limited to a constitutional analysis context under the contracts clause. *See, e.g., Oshkosh Waterworks Co. v. Oshkosh,* 187 U.S. 437, 439, 23 S.Ct. 234, 234, 47 L.Ed. 249 (1903) ("parties have no vested right in the particular remedies or modes of procedure then existing" at the time the contract was entered as long as the parties can still go forward with a cause of action); *Whalen v. Citizens Bldg. & Loan Co.,* 67 Ohio App. 139, 36 N.E.2d 54, 55 (1940) ("a subsequently enacted section may curtail [a] remedy if a reasonable time is provided for assertion of the existing right").

tion statute established a primary right and duty which was not in existence at the time the injuries in this case arose." *Id.* at 522.

Likewise, in *Stephens v. Henderson*, 741 P.2d 952, 953–54 (Utah 1987), the Utah Supreme Court examined the application of the Liability Reform Act which limited a defendant's joint liability in tort actions. The court determined that the act could not be applied retroactively because it was substantive and affected "the relationship between the parties at the time of the accident." *Id.* at 954. The *Stephens* court defined a law as substantive "if it 'creates, defines and regulates the rights and duties of the parties....'" *Id.* at 953 (quoting *Petty v. Clark*, 113 Utah 205, 192 P.2d 589, 593–94 (1948)).

Under section 57–1–31, at the time Tanner assumed his obligations under the note and trust deed, the law allowed him to cure his default anytime before a judgment of foreclosure was entered against him, even after acceleration, by merely paying the amount in default. That law became a part of the parties' contract. The amendment of section 57–1–31 changed the law to require the debtor to pay the entire amount of the note in order to cure his default in a judicial foreclosure proceeding. Thus, the amendment eliminates Tanner's right to cure a default under his trust deed and note by paying only the amount in default. This changes the meaning of his contract and deprives him of 'a contractual right which he would have had under the prior statutory scheme. *Petty*, 192 P.2d at 593. The elimination of this contractual right is a substantive change in the law affecting his vested rights. *See Gulf Homes, Inc. v. Gonzales*, 139 Ariz. 1, 5, 676 P.2d 635, 639 (Ct.App.1983) (amendment to a statute allowing for collection of late payment fees on a retail installment contract was substantive).[10]

In conclusion, because the legislature did not expressly provide that the 1985 amendment to section 57–1–31 was to be applied retroactively, and because we find the amendment affects Tanner's substantive contractual rights, we reverse the trial court's legal conclusion that Tanner was required to pay the entire amount of the note in order to cure his default under the note and trust deed.

## TENDER OF PAYMENT

Washington argues that, even if we do not apply the amended statute, Tanner's tender was insufficient as a matter of law. Washington claims Tanner did not establish that he was able to pay even the amount in default.

■ "In order to have a valid tender, there must be 'a bona fide, unconditional, offer of payment of the amount of money due, coupled with an actual production of the money or its equivalent.'" *Carr v. Enoch Smith Co.*, 781 P.2d 1292, 1294 (Utah Ct.App.1989) (quoting *Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975)). Informing an obligee that you are ready and willing to perform the contract is insufficient. *Century 21 All W. Real Estate & Inv. v. Webb*, 645 P.2d 52, 55–56 (Utah 1982); *Fischer v. Johnson*, 525 P.2d 45, 47 (Utah 1974). *But see Fitzgerald v. Corbett*, 793 P.2d 356, 359, (Utah 1990) (tender requirement may be excused where tender would be "idle ceremony").

■ The district court found that Tanner's tender was insufficient. However, the court based this finding on its erroneous legal conclusion that the 1985 amendment to section 57–1–31 applied and thus Tanner was required to tender the entire amount of the note to cure his default. The facts in the record are in dispute as to whether Tanner's tender was coupled with

---

**10.** Several recent cases from other jurisdictions have found that a modification of the statutory redemption period in a foreclosure statute could not be applied to a contract entered into before the statutory change. These courts concluded that application of the modified statute would impair the obligation of contract and thus vio-

late the contract clause under the applicable state and federal constitutions. *Federal Land Bank v. Arnold*, 426 N.W.2d 153 (Iowa 1988); *Burke v. E.L.C. Investors, Inc.*, 110 Wis.2d 406, 329 N.W.2d 259 (1928); *Portland Sav. Bank v. Landry*, 372 A.2d 573 (Me.1977).

a present ability to cure the default.[11] Therefore, we remand this issue to the district court for a determination of whether Tanner's tender was legally sufficient.[12]

In summary, we find that section 57–1–31, as amended in 1985, does not apply to this foreclosure action; that Tanner, therefore, could have cured his default under the note and trust deed by timely tendering only the amount in default to Washington; and, finally, that the facts in the record are in dispute as to the legal sufficiency of Tanner's tender. We therefore reverse and remand for proceedings consistent with this opinion.

GARFF and GREENWOOD, JJ., concur.

11. Tanner filed an affidavit stating that on "December 7, 1987, I had the ability to cause Ridge Athletic Club, Inc. to pay the sum of $119,200.00 as indicated in the tender." In his deposition, he claimed the source of funds was a credit line available to him through his brother and/or an advance on a loan which was in process. Washington points to other record testimony inconsistent with Tanner's position. We thus are faced with a material disputed issue of fact and the matter cannot be resolved on summary judgment.

12. Because of our resolution of the case, we do not reach the other issues raised on appeal.